UNITED STATES, Appellee

v

WILLIAM D. FRIERSON, Private, U. S. Army, Appellant

20 USCMA 452, 43 CMR 292

No. 23,490

April 2, 1971

 

*Captain Francis X. Gindhart* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Major Alan W. Cook,* and *Captain Monte Engler.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Captain Benjamin G. Porter.*

## Opinion of the Court

QUINN, Chief Judge:

At issue on this appeal is the sufficiency of the evidence to support the accused's conviction of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922.

Private Snyder was returning to his barracks at Fort Knox, Kentucky, when he encountered a group of soldiers. He was set upon by several members of the group. The accused, whom Snyder was able to identify because he "had a good look at him" in the light of a street lamp, struck Snyder three times. One of the blows broke Snyder's nose. The assault and remarks by his assailants led Snyder to conclude they wanted his money. He said: " 'If you want my money, take it. You don't have to hit me anymore.' " One of the assailants, not identified by Snyder, had removed Snyder's wallet from his back pocket; this man extracted money from the wallet and then returned the wallet to Snyder.

Private Shumake also testified for the Government. He heard Snyder scream. He identified three persons around Snyder, whom he knew as members of the class ahead of his at Cook's School. He saw the accused "slap Private Snyder," and the others "pushing . . . [Snyder] around. He also saw Murray, one of the trio, with a wallet in his hand, and he heard the accused say: " 'Go ahead and take my wallet. I haven't got but two dollars.' " Another Government witness testified that he, too, knew the accused. He saw him and several others "jump on Private Snyder." He heard Snyder scream and he "ran up." As he approached, he "saw someone passing . . . [a wallet] back to Private Snyder"; he "thought" it was the accused, but he was not "sure."

Testifying in his own behalf, the accused denied he was part of the group that assaulted Snyder. He maintained that he saw someone hit Snyder, and he "went over there to break it up." He denied he took Snyder's wallet; he denied any intent to take money from Snyder; and he denied knowledge that "someone else . . . [took] a wallet from him."[1]

Robbery is the taking of property from the person of another by force or fear of injury, "with intent to steal." Article 122, Code, supra. The accused

---

[1] Strangely, the accused was not directly asked, and never indicated in his testimony, whether he had struck Snyder.

contends that the evidence is insufficient to establish beyond a reasonable doubt that he knew of, or shared in, the intent to steal Snyder's money.

Although the accused denied he was part of the group that assaulted Snyder, the evidence provides solid support for a finding that he joined in the assault. The trial judge "heard the testimony . . . , observed the personal demeanor of each witness, and . . . [was] in a superior position . . . to accept or reject" their testimony. United States v Albright, 9 USCMA 628, 631, 26 CMR 408 (1958). It is indeed true, as the accused maintains, that participation with others in an assault does not necessarily indicate all the participants shared the same intention or purpose. United States v Jackson, 6 USCMA 193, 19 CMR 319 (1955); United States v McCarthy, 11 USCMA 758, 29 CMR 574 (1960).

At least four inferences from matters in evidence bear significantly on the question of intent. First, it may be fairly inferred from the position of the assailants that they grouped themselves around Snyder for a special reason; secondly, from the fact that the accused struck Snyder frontally with sufficient force to engage completely his attention while the others pushed him around, it may be reasonably inferred that the technique was a means to explore Snyder's person for his wallet; thirdly, from the fact that bystanders heard Snyder's remarks about his money and saw Snyder's wallet returned to him, it may fairly be inferred that the accused was also aware of the statements and the action; and, finally, from the fact the punching and pushing of Snyder stopped when his wallet was taken and the money extracted, it may fairly be inferred that stealing was the purpose of the assault. Inferences reasonably raised by the evidence may be considered by the trier of the facts in determining the accused's guilt or innocence. United States v Wilson, 13 USCMA 670, 673, 33 CMR 202 (1963). We conclude, therefore, that the evidence provides ample support for the finding by the trial judge that the accused intended to, and did, in fact, steal Snyder's money from his person by force and violence.

The decision of the United States Army Court of Military Review is affirmed.

Judge DARDEN concurs.

Judge FERGUSON did not participate in the decision of this case.